[Civ. No. 5166.   Third Appellate District.—December 7, 1934.]

N. H. SCHUR, Appellant, v. CHARLES G. JOHNSON, Treasurer, etc., Respondent.

Erwin P. Werner and Roy W. Colegate for Appellant.

Leslie H. Kranz, Bernard P. Calhoun, Clive W. Johnson, Young, Lillick, Olson, Graham & Kelly, E. Logan Williams, Errol O. Shour, Saul S. Klein and W. Cloyd Snyder, *Amici Curiae* on Behalf of Appellant.

U. S. Webb, Attorney-General, H. H. Linney, Deputy Attorney-General, Roger Traynor and Frank M. Keesling for Respondent.

THOMPSON, J.—The plaintiff, who operates a tango game played for merchandise which is convertible into cash, has appealed from a judgment which was entered against him for failure to amend his complaint for the recovery of sales tax paid to the state of California under protest, after a demurrer to the pleading had been sustained. The appellant claims that the transactions incident to the game do not constitute sales of merchandise rendering him liable for tax under the provisions of the California Retail Sales Tax Act (Stats. 1933, p. 2599), and that the act is unconstitutional.

The complaint alleges that the plaintiff maintained at Santa Monica a place of amusement during the year 1933, in which he operated a tango game, the receipts from which amounted to $48,805.91, derived from charges made for each player's participation in the game; that those who succeeded in winning at the game were paid in merchandise, consisting of cigars, cigarettes or tobacco which are redeemable by the operator of the game at the market value thereof; that during the year 1933 ninety-nine per cent "of the persons winning said games and given said merchandise did not consume the same or any part thereof, and did not play said game for the purpose of securing said merchandise for consumption, but on the contrary sold and disposed of the same immediately upon receipt thereof in the same form as received by them". It was alleged the game of tango was played by means of apparatus including glass-faced bins with "numbered slots or compartments in the bottom thereof", and by use of cards and colored balls. From the description of the game the result of a player's participation therein appears to depend on chance and not upon skill. The complaint alleges that upon the demand of the state board of equalization the plaintiff paid to the state of California two and one-half per cent sales tax on the gross income from his tango game in the year of 1933, amounting to the sum of $1220.15, and prays for judgment in that sum.

To this complaint the state of California filed a demurrer on the grounds, among others, that the complaint fails to state facts sufficient to constitute a cause of action, and that "It cannot be ascertained from said complaint whether the plaintiff is engaged in conducting or operating a business

which is permissible under the laws of the state of California, or whether plaintiff is conducting a gambling enterprise contrary to and prohibited by said laws.'' This demurrer was sustained and the plaintiff was allowed ten days in which to amend the pleading. Having failed to amend the complaint, on motion of the defendant, judgment was rendered against the plaintiff for failure to amend his complaint within the time allowed therefor, or at all. From this judgment the plaintiff has appealed.

We are of the opinion the demurrer was properly sustained. If the tango game as it is described in the complaint constitutes ''a banking or percentage game played with cards, dice or any device, for money, checks, credit or other representative of value'', it is prohibited by the terms of section 330 of the Penal Code as a gambling game, and this court will not assume to determine a controversy respecting the proceeds of such a game. If the game of tango, as it is described in the complaint, appears to be a gambling game which is prohibited by law, but the allegations of the complaint leave it uncertain in that regard, then the demurrer for uncertainty on that ground was properly sustained. There is nothing in the complaint which indicates that the game of tango is a game of skill. On the contrary, the allegations of the complaint indicate that it is a game of chance played by means of cards and a device for money and other representatives of value, in violation of section 330 of the Penal Code. It appears that the plaintiff was maintaining a ''place of amusement'' at Santa Monica, and not a tobacco store. The very fact that the average gross income from this game of tango which is conducted in an acknowledged place of amusement was in excess of $4,000 a month indicates that it was not a mere tobacco stand business that was being maintained. The players pay to the operator of the game money for the privilege of winning a prescribed stake based on pure chance. Ninety-nine per cent of those who play at the game do so with no intention of accepting the merchandise in payment of their winnings, and on the contrary forthwith accept the market value of the merchandise in paying off their winnings. The offering of cigars, cigarettes or tobacco as an inducement to participate in this chance game is a mere

subterfuge. Apparently the tango game which is described in the complaint is a pure gambling game which is prohibited by the provisions of section 330 of the Penal Code. Since it does appear to be a gambling game, or even though the allegations of the complaint leave a doubt as to whether it is such a prohibited game, the court properly sustained the demurrer on the ground of uncertainty.

It is the uniform rule of our courts that transactions involving a prohibited gambling game will not be enforced for the reason that such transactions are against public policy and in conflict with the welfare and morals of society. (12 R. C. L., p. 747, sec. 52; 6. R. C. L., p. 712, sec. 120.) In the authority last cited it is said in that regard:

"Courts of justice will never recognize or uphold any transaction which, in its object, operation, or tendency, is calculated to be prejudicial to the public welfare. . . . A contract is against public policy if it is injurious to the interests of the public or contravenes some established interest in society, or if it contravenes some public statute, or is against good morals, or tends to interfere with the public welfare or safety."

This suit is one in *assumpsit* for the return of money paid under protest. This action is based on the theory that the board of equalization illegally enforced the payment of the money under the Sales Tax Act assuming that the plaintiff was conducting a tobacco business which requires him to pay the sales tax on all merchandise sold, and that the law assumes there is an implied promise to return to the owner the money which is so illegally acquired. In support of his theory that he was not conducting a business in which sales of merchandise are made, the plaintiff has pleaded and must rely on the conducting of transactions which appear to be in conflict with section 330 of the Penal Code. Courts will not lend their aid to transactions founded on illegal contracts or acts in violation of law. It is said in 2 Elliott on Contracts, page 4, section 645, in that regard:

"The law will not lend its support to a claim founded upon its violation. . . . No court will lend assistance to one who founds his cause of action upon an illegal act . . . when it appears that the very party who is seeking aid from the court participated in the unlawful purpose. It has been said that the test of its application is whether the plaintiff

can establish his case otherwise than through the medium of an illegal transaction to which he himself is a party.''

In the present case the demurrer raises the question of the illegality of the tango game incident to which the sales tax was collected. ▉ Even if the parties to the suit do not raise the question of the illegality of the transaction upon which the suit is founded, it is the duty of the court to do so on its own motion, when the acts upon which the plaintiff relies appear to be in violation of law.

We are of the opinion the demurrer was properly sustained.

The judgment is therefore affirmed.

Pullen, P. J., and Plummer, J., concurred.