[Civ. No. 2240.   Third Appellate District.—September 30, 1921.]

## JESSIE HARKNESS GATES, Appellant, v. LAUD C. GATES, Respondent.

[1] DIVORCE — INTERLOCUTORY DECREE — TEMPORARY ALIMONY — FINAL DECREE—PROVISION FOR PERMANENT ALLOWANCE—JURISDICTION.—A court has jurisdiction under section 139 of the Civil Code to provide in a final decree of divorce for the support and maintenance of the wife, notwithstanding the interlocutory decree of divorce awarding alimony until the entry of the final judgment has become final and no right to make any order for further alimony is reserved therein, and notwithstanding such section was enacted before the law was changed providing for interlocutory judgments in divorce cases.

APPEAL from an order of the Superior Court of Stanislaus County recalling and modifying an execution for alimony. J. C. Needham, Judge. Reversed.

The facts are stated in the opinion of the court.

H. S. Henion and Whitmore & Henion for Appellant.

R. R. Fowler, James C. Nichols and Fowler & Nichols for Respondent.

BURNETT, J.—The facts and the legal controversy involved herein, as stated in our former opinion, are as follows: "The plaintiff, on the twelfth day of January, 1917, filed a verified complaint in a suit for divorce against the defendant on the ground of cruelty. On the fifteenth day of January, 1917, the defendant filed an answer, denying the charge of cruelty so alleged, and on said fifteenth day of January, 1917, the court granted an interlocutory decree to plaintiff, declaring her to be entitled to a divorce from defendant and awarding to her alimony in the sum of $75 per month, 'the first payment to be made on the tenth day of February, 1917, and thereafter on the tenth day of each succeeding month until the entry of final judgment or decree herein.' The court did not in said decree reserve the right to make any order for further alimony.

"During the time intervening between the granting of the interlocutory decree and the granting of the final decree, a child was born to the parties, as to the legitimacy of whom no question is raised.

"After the birth of said child and prior to the granting of the final decree, the plaintiff, through her attorneys, served upon opposing counsel a notice that she would on Friday, the twenty-fifth day of January, 1918, make an application for a modification of that part of the decree relating to alimony so that it would provide as follows: That the custody of the minor child be awarded to plaintiff and that 'defendant be required to pay to plaintiff the sum of $75 per month until further order of the court as an allowance for the support and maintenance of said plaintiff and said minor child, and the further sum of $100 as attorney's fees in connection therewith and for the costs of this proceeding.' This notice was dated the seventeenth day of January, 1918, two days beyond the year after the interlocutory decree was granted and was filed with the records of the case in the office of the clerk of the court on the eighteenth day of January, 1918.

"On the thirtieth day of January, 1918, more than one year after the granting of the interlocutory decree, the court made its final decree, granting to plaintiff a divorce and therein inserted a provision that the custody of the minor child be awarded to plaintiff, and that 'the defendant pay to plaintiff monthly an allowance for the support of said plaintiff and said minor child the sum of $60, whereof $25 is for the support of said minor child and $35 is for the support of plaintiff, payments to be made monthly, beginning with this decree; and that the defendant further pay to the plaintiff as attorney's fees in this proceeding the sum of $20, and the costs of this proceeding.'

"After the granting of the final decree, the defendant gave notice of appeal therefrom to the supreme court, but the same was thereafter dismissed on the stipulation of the parties.

"It appears that defendant failed and refused to make the monthly payments required by the final decree, and on the eleventh day of February, 1920, the sum of $1,468.55 having accrued to plaintiff under the terms of said decree, a writ of execution was issued on the application of plaintiff

out of the superior court of Stanislaus County, directing the
sheriff to enforce the collection of the sum named by seizure
and sale of so much of the property of defendant as might
be necessary to satisfy the same.

"Subsequently, and prior to the satisfaction of said writ
by the sheriff, defendant served upon plaintiff a notice of
a motion for an order recalling, modifying, and correcting
said writ of execution. The said motion, in pursuance of
the terms of the notice thereof, was regularly called for
hearing on the first day of March, 1920. At said hearing,
the court, over the objection of the plaintiff, admitted and
received in evidence a certain written agreement, entered
into between the parties to the divorce action, on the ninth
day of January, 1917 (six days prior to the entry of the
interlocutory decree), wherein and whereby, after reciting
the differences arising between them and declaring it to be
impossible by reason of such differences for them further to
live together as husband and wife, the defendant agreed to
pay to the plaintiff the sum of $75 per month, payable
monthly and on the tenth day of each month, said payments
to begin on the tenth day of January, 1917, and to continue
for one year from said date. Said agreement thus con-
cluded: 'Said payment of $75 per month to be in lieu of
and as and for alimony paid by said first party to said
second party and for the support and maintenance of said
second party and for the support and maintenance of the
expected child of said parties during said period of twelve
months.'

"At the hearing of said motion, it was admitted that
the sum of $380 had been paid on account of the sum of
$1,468.55, specified as due in said execution.

"The court, on the twelfth day of May, 1920, rendered its
decision granting the motion and the execution was accord-
ingly recalled and modified, and denied the plaintiff any
sum whatsoever for her own support, as provided for in the
said final decree of divorce, and also denied plaintiff counsel
fees in defense of said motion to modify said writ of execu-
tion. The court also, by said order of modification, awarded
plaintiff the sum of $235.25 found to be due to her for the
support of the minor child.

"The appeal here is by the plaintiff from the last-men-
tioned order.

''The contention of the appellant is that the order complained of is the result of a collateral attack upon the final judgment granting plaintiff a divorce from defendant, and that the judgment, not being void upon its face, is not subject to such an attack.

''It is, of course, the established rule that a judgment cannot be assailed in a collateral proceeding or except by appeal unless it is void upon its face. 'In a collateral attack every intendment is in favor of the judgment and the judgment will be set aside, generally speaking, for but one of three reasons—lack of jurisdiction of the person, lack of jurisdiction of the subject matter of the action, or an absolute lack of jurisdiction to render such a judgment as the one given.' (*Baldwin* v. *Foster,* 157 Cal. 643, 646 [108 Pac. 714].)   No question is raised here of the power of the court to provide in its final decree for the support and maintenance of the minor child of the parties.   The sole question here is whether, in view of the terms of the interlocutory decree as to alimony, the court in making provision in the final decree for the support and maintenance of the wife was within its jurisdiction.   If the court has the legal authority for making such provision, then, obviously, an objection to the judgment in that particular may be presented to a court of review only by appeal.   On the other hand, if the making of such a provision in the final decree is in excess of its (the court's) jurisdiction, then, when such provision is so made, the judgment to that extent is invalid, and such invalidity is of a character to be apparent upon an inspection of the judgment-roll.''

[1]   After a more deliberate examination of the law we feel entirely satisfied that the trial court in making said modification of the award to the plaintiff acted within the limits of its jurisdiction and, therefore, that the judgment-roll did not authorize the court to recall said execution.   We think that this follows clearly from the plain language of section 139 of the Civil Code, providing: ''Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support, *during her life, or for a shorter period* as the court may deem just, having regard to the circumstances of the parties, respectively; and *the court may, from*

*time to time, modify its order in these respects."* It is true
that this section was enacted before the law was changed
providing for interlocutory judgments in divorce cases (sec.
131, Civ. Code), but that circumstance is entirely immate-
rial, the difference being that now the allowance for support
is provided by said interlocutory judgment and it may or
may not be carried into the final judgment.

Applying said section 139 to the situation presented herein
we must find legal warrant in every particular for said
modified order. In the first place, the divorce "was granted
for an offense of the husband." The court in granting said
divorce, as shown by the interlocutory judgment, made an
"allowance to the wife for her support." We must assume,
of course, in the absence of the evidence, that such allow-
ance was "suitable" under "the circumstances of the parties
respectively." This allowance was made "for a shorter
period" than "during her life," namely, until the entry
of final judgment. Respondent seems to think that the sec-
tion applies to a permanent award rather than to one of a
temporary character, but there is nothing in the language of
the section to justify the contention. The authority indeed
extends to cases wherein the award is for life or for any
"shorter period." It would be hard to conceive of language
that would more closely fit the situation shown herein.

In considering the question it is to be borne in mind that
the first award was not for "suit money," as it is sometimes
called. It was not made on motion at the beginning of the
action to enable her to prosecute the case. If it had been,
there might be some force in respondent's contention. The
award was made, however, after trial for the support of the
wife and possible issue, and was a part of the judgment
settling the property rights of the parties and decreeing that
the plaintiff was entitled to a divorce.

That the interlocutory judgment had become final before
the modification was made does not render said section 139
inapplicable. The provision rests upon the theory that the
trial court has a continuing jurisdiction in reference to
such award. Its authority is not exhausted by the original
order, nor is it foreclosed by the expiration of the time for
an appeal.

It is equally plain that the court is not required by ex-
press provision to reserve the authority to modify the award

in order to justify such action. The language of said section becomes a part of the original order as though written therein. The section itself *reserves* to the court the authority to modify the allowance.

It may be added that the decisions are in harmony with appellant's position. Indeed, after an examination of a large number of cases we think none can be found involving a similar statute and similar facts, wherein it was held that the court had no jurisdiction to make such modification of the original judgment.

In *Soule* v. *Soule,* 4 Cal. App. 97 [87 Pac. 205], after quoting said section 139 the court said: "This statutory provision enters into every decree in an action for divorce which provides for the·payment by the husband of an allowance for the support of the wife, as fully as though it should be incorporated into the terms of the ·decree. The authority of the court to modify its decree in this respect does not depend upon a reservation therefor in the decree itself, but exists by virtue of the statute, and being conferred by the legislature, it is beyond its power to divest itself of such authority.

"Under this section it may modify its former order either by increasing or reducing the amount of money to be paid at any one time or enlarging or diminishing the frequency with which the payments are to be made. Neither is the authority to modify the decree limited by the section to a mere change in the amount of the allowance to be paid, but it includes a modification of the order in any respect which under the circumstances of the particular case may seem just to the court. . . . In the present case the right of the plaintiff to alimony was established by the decree in her action for divorce, and section 139 gives the court the authority to modify it."

In *Mathews* v. *Mathews,* 49 Cal. App. 497 [193 Pac. 586], it is said: "Thus when the court by its judgment does require the husband to pay alimony, and that judgment is not appealed from or vacated, it stands as a judicial determination of the rights of the wife to such alimony, subject always to the retention by the court of jurisdiction to modify its judgment from time to time in that respect. That the court may modify its order with respect to alimony there can be no question."

In *Willey* v. *Willey*, 51 Cal. App. 124 [196 Pac. 101], the court said: "We hold, however, that the court was not limited by the somewhat inartificially drawn prayer of the complaint as to its power to require the defendant to pay plaintiff alimony in the action based upon charges of desertion and failure to provide, sustained by a showing of the plaintiff's necessities and of the defendant's financial ability to relieve them. It possessed that power under section 137 of the Civil Code, and it also possesses the power to modify its orders made in that respect from time to time under its express reservation of that power, and also under section 139 of the Civil Code."

In *Cohen* v. *Cohen*, 150 Cal. 99 [11 Ann. Cas. 520, 88 Pac. 267], it is said: "The judgment in the first instance might have been for a gross sum, or for periodical payments, either for a stated period or, as in effect was done, during the life of the plaintiff. (Civ. Code, sec. 139.) To change this judgment so as to require the payments for a stated period only would not be an annulment of the original judgment, but only a modification thereof. Therefore, such modification would be within the power of the court even if it were conceded that the power to modify did not give authority to vacate such order in its entirety."

The decisions in other states having a statute similar to ours are in line with the foregoing, a few of which may be cited: *Skinner* v. *Skinner*, 205 Mich. 243 [171 N. W. 383]; *Martin* v. *Martin*, 195 Ill. App. 32; *Delbridge* v. *Sears*, 179 Iowa, 526 [160 N. W. 218]; *Holmes* v. *Holmes*, 90 Minn. 466 [97 N. W. 147]; *Smith* v. *Smith*, 190 Mass. 573 [5 Ann. Cas. 939, 77 N. E. 522]. For many others we may refer to *Ruge* v. *Ruge*, 97 Wash. 51 [L. R. A. 1917F, 721, 165 Pac. 1063], wherein is found a comprehensive review of the authorities including some of the text-books. In the Washington case, *supra*, it is admitted that the court may make such modification where said power is reserved in the original decree or where statutory authority exists, but, in the absence of such reservation or statutory authority, it was held that the court could not modify "a decree for alimony, payable in periodical installments, as fixed by a decree of divorce."

In none of the cases cited by respondent does anything appear contrary to the foregoing.

In *Howell* v. *Howell,* 104 Cal. 45 [43 Am. St. Rep. 70, 37 Pac. 770], there was no judgment for alimony and the court held that "the provision of section 139 of the Civil Code, authorizing the court from time to time to modify its orders for the maintenance and support of the wife and children, contemplates that the right to alimony as well as other property rights shall have been presented in the action and established by the judgment, and there can be no modification of an allowance for alimony where there is no allowance to modify."

*O'Brien* v. *O'Brien,* 124 Cal. 422 [57 Pac. 225], is to the same effect wherein it was held that "where the question of alimony was in issue in a divorce suit and no finding was made thereupon, and no alimony was awarded in the order of judgment, or in the entry thereof, the error is judicial, and after the entry of judgment the court loses jurisdiction to amend it so as to reserve the question of alimony or to award alimony upon motion."

In *Bancroft* v. *Bancroft,* 178 Cal. 367 [173 Pac. 582], the question was whether the trial court had power, upon the motion of either party, to set aside the interlocutory decree in a divorce case at any time prior to the entry of the final decree, and it was properly held that it was subject to attack, like other judgments, only upon appeal or by proceedings under section 473 of the Code of Civil Procedure, "within six months after the entry of such decree, and that after the expiration of the period within which either of these forms of attack may be made, the trial court is without jurisdiction to alter or set aside its interlocutory decree."

We think there is no escape from the conclusion that the court had jurisdiction to make such modification and that it was error to recall said execution, and the order is therefore reversed.

Finch, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 28, 1921.

All the Justices concurred.